CHARLES BEST, APPELLEE, v. HELEN GRALAPP ET AL., APPELLANTS.*

FILED SEPTEMBER 17, 1903.   No. 13,016.

1. **Specific Performance.** An agreement to devise land, upon sufficient consideration, may be enforced specifically in a proper case.

* Rehearing allowed. See opinion, p. 815, *post.*

2. **Agreement to Will Property.** It is sufficient if the agreement is that the promisee shall receive the property, or that it shall be left him at the decease of the promisor. There need not be an express promise to make a will.

3. **Equity: TRUST.** Equity will impress a trust upon the property in such cases, which will follow it into the hands of personal representatives or devisees of the promisor.

4. **Agreement Enforceable.** An agreement to leave property by will is not ambulatory or revocable after performance on the part of the promisee.

5. **Part Performance: STATUTE OF FRAUDS.** Part performance of such a character that the court can not restore the promisee to the situation in which he was when the agreement was made or compensate him in damages, is sufficient to take the case out of the statute of frauds.

APPEAL from the district court for Johnson county: CHARLES B. LETTON, DISTRICT JUDGE. *Affirmed.*

*M. B. C. True* and *James E. Philpott,* for appellants.

*Lewis C. Chapman* and *John B. Douglas, contra.*

POUND, C.

This is a suit to quiet title. The plaintiff, who is in possession of the premises in controversy, alleges that on the 22d day of May, 1899, and for many years prior thereto, his father, now deceased, was the owner and in possession of the property; that his father was an old man at that time; that all his children were of full age and living out of the state, and that his wife was divorced; that under these circumstances his father, being without suitable care, attention and protection, agreed with the plaintiff, who was then in business in the state of Kansas, that if the plaintiff would abandon his business there and return with his family to the property in controversy, take charge thereof and of the plaintiff and provide him with suitable home and attention until his death, the plaintiff should receive at his death the land in question, and other property not material to this controversy. He further alleges that in

pursuance of and part performance of said agreement, and in reliance thereon, he closed out his business in Kansas, sold his property in that state except such as he could use at his father's home in Nebraska, and removed to the property, upon which he and his family have resided ever since; that he performed in all respects everything on his part to be done and performed under said agreement; and that he assumed and paid all the funeral expenses and expenses of the last illness of his father and all other claims that might be charged as debts against his father's estate, including certain expenses of removing a cloud upon his father's title to the property. He also alleges that his father died on the 14th day of March, 1901, and that five of the children and heirs at law of his father have since that time conveyed and quitclaimed to him all title or interest which they might have in the property. Three children and the heirs of a fourth, deceased, who have not executed such conveyances are made defendants, and the petition prays that the title to the property may be quieted in the plaintiff as against them. The trial court found generally for the plaintiff and against the defendants and rendered a decree as prayed for.

We think the findings and decree are right and should be affirmed. An agreement to devise land, upon sufficient consideration, may be enforced specifically in a proper case. *Howe v. Watson,* 179 Mass. 30, 60 N. E. 415; *Bird v. Jacobus,* 113 Ia. 194, 84 N. W. 1062; *Whiton v. Whiton,* 179 Ill. 32, 53 N. E. 722. It is sufficient if the agreement is that the promisee shall receive the property, or that it shall be left him at the decease of the promisor. There need not be an express promise, in so many words, to make a will. *Kofka v. Rosicky,* 41 Neb. 328. Equity will impress a trust upon the property in such cases, which will follow it into the hands of personal representatives or devisees of the promisor. *Price v. Price,* 111 Ky. 771; *Howe v. Watson, supra; Duvale v. Duvale,* 54 N. J. Eq. 581, 56 N. J. Eq. 375; *Bruce v. Moon,* 57 S. Car. 60, 35 S. E. 415; *Fogle v. St. Michael P. E. Church,* 48 S. Car. 86, 26

S. E. 99; *Smith v. Pierce,* 65 Vt. 200, 25 Atl. 1092; *Burdine v. Burdine,* 98 Va. 515, 36 S. E. 992.

On behalf of appellants the principal contention seems to be that the agreement in question, being testamentary in character, was ambulatory and revocable during the life of the testator. But after performance on the part of the plaintiff of substantially everything to be done on his part, this can not be true. To hold the agreement revocable under such circumstances would be to permit a fraud which a court of equity could not sanction. This very question was decided in *Bruce v. Moon, supra.* It is also insisted that the agreement was within the statute of frauds. While there is some conflict of authority on this point, the authorities recognized and followed in this state hold that part performance, of such a character that the court can not restore the promisee to the situation in which he was when the agreement was made or compensate him in damages, is sufficient to take the case out of the statute of frauds. *Kofka v. Rosicky,* 41 Neb. 328; *Rhodes v. Rhodes,* 3 Sandf. Ch. (N. Y.) 279; *Shahan v. Swan,* 48 Ohio St. 25, 26 N. E. 222; *Sutton v. Hayden,* 62 Mo. 101. This doctrine has the support of many recent decisions. *Winne v. Winne,* 166 N. Y. 263, 59 N. E. 832; *Svanburg v. Fosseen,* 75 Minn. 350, 78 N. W. 4; *Owens v. McNally,* 113 Cal. 144, 45 Pac. 710; *Carmichael v. Carmichael,* 72 Mich. 76, 40 N. W. 173. Where a man of middle age and the head of a family closes out his business, disposes of his property, presumably at a sacrifice, as is inevitable in such cases, and removes to another state for the purpose of taking charge of the property and person of an aged parent, the entire course of his life is so far changed that it would be impossible to compensate him adequately in damages or to restore him, after a lapse of some years, to his original position. To permit the statute of frauds to be asserted in such a case is to work a fraud upon the promisee. In the brief on behalf of appellants, some claim is made with respect to the statute of homesteads. We do not think that statute involved in any way. It

Best v. Gralapp.

appears that all the children of the deceased had come of age and left the state long prior to the agreement in question. His wife was long since divorced and, except as against the claims of creditors with respect to debts incurred during the continuance of the marriage relation, no homestead rights attached to the land. Several of the questions involved in this case were before the court in *Teske v. Dittberner*, 65 Neb. 167. But as a rehearing is pending, chiefly, however, upon question as to the effect of the homestead statute upon the circumstances of that case, we have preferred to treat the questions at issue independently.

It is recommended that the decree be affirmed.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed May 18, 1904. *Judgment of affirmance adhered to:*

1. **Quieting Title:** DECREE: EVIDENCE. Evidence examined, and found sufficient to sustain the decree entered in the trial court quieting title to the real estate in controversy in the plaintiff, appellee in this court.

2. **Probate Court:** JURISDICTION. A probate court is without jurisdiction to try and determine title to real estate.

3. **Will:** PROBATE: COLLATERAL ATTACK. A suit in the district court to enforce the specific performance of a parol agreement to devise real property and to quiet title in the plaintiff, as against those claiming under a will duly allowed and admitted to probate in the county court is not a collateral attack on the judgment admitting such will to probate.

4. **Affirmed.** The former opinion and the judgment of affirmance in accordance therewith, adhered to.

HOLCOMB, C. J.

This cause is submitted on rehearing. The former opinion, formulated by Mr. Commissioner POUND, fully states

the case. *Ante,* p. 811. The suit in its nature is for the purpose of obtaining a decree for a specific performance of an agreement, resting in parol, to devise real estate and to quiet title in the plaintiff as against others claiming through a will duly allowed and admitted to probate. As we read the record, we think it is conclusively established that the deceased, Charles Best, Sr., who was at the time near eighty years of age and in need of the care and protection of others younger and more able to work, and who was living alone, having been divorced from his wife, and whose children had departed from the parental roof, caused to be written a letter to his son, the plaintiff in this action, proposing that he should move from his then residence in Kansas to the farm and home of the deceased, and care for him during the remainder of his life, and that in return for such services the son should have his property, or what was left of it, at his death. It appears that the deceased was at the time living alone on the land in controversy, comprising an eighty acre tract and worth approximately the sum of $3,000; that at his instance and request, a neighbor wrote to the plaintiff proposing that if he would remove from his then home to the home of the deceased and care for the latter till his death, he would give him all the property he had left. The letter itself is not in evidence and its exact terms are not known. In response to the letter, the son visited his father and made arrangements resulting in his disposing of his property, which consisted of personalty only, and giving up the business in which he was engaged in Kansas, and with his family removing to the home of the deceased where he took charge of the place, cared for and supplied his father with needed sustenance, looked after him until his death, and paid expenses incidental to his last illness, death and burial, which occurred some twenty months after he had moved on the home place. There is an abundance of evidence that the deceased many times said that he had made the arrangement contemplated in the proposition first imparted to his son by the

letter mentioned; that he was well satisfied with the agreement and was receiving, under the arrangment thus made, the proper care and attention from his son and family that his age and circumstances seemed to require, and it is not to be doubted that the plaintiff in good faith performed to the fullest extent all the obligations resting upon him, and which he was in duty bound to do under the agreement theretofore entered into.

It is argued that the plaintiff was not let into the full possession of the premises and that therefore there was not such performance of the parol agreement as to relieve it from the operation of the statute of frauds. Of course, he moved into the house in which the father had been residing as his home and homestead, and in which he continued to reside until his death. It is obvious, however, that the son became the head of the household and conducted the affairs of the farm, while the old gentleman retained one room of the building in which the son and his family also resided. He ate at the family table supplied by the plaintiff, and became in fact a member of his family. The most that can be said in favor of the defendants' contention is that they occupied the premises jointly. It is manifest that it was in pursuance of the agreement and in carrying it into execution that the son removed onto the father's premises, lived there in the dwelling house erected thereon, and was in possession thereof with a view of caring and providing for the father as contemplated by the terms of the agreement. Such possession, we are satisfied, is on equitable principles all that is required in order to give the plaintiff the benefit of the fact of possession of the premises involved in the controversy as a part performance of the parol agreement to leave the son the real estate on the death of the father. So far as the son was concerned under the agreement, he was let into the entire and undisputed possession of the real property, as was therein contemplated in order to effectuate its purposes. The oral agreement accompanied by the possession and the performance of its terms were, under the

circumstances, sufficient to take it without the statute of frauds.

There is also a contention to the effect that equity ought not to interpose and grant relief to the plaintiff because he may be fully and adequately compensated in money for the services performed under the alleged agreement. We were disposed to believe, when the rehearing was granted, that possibly the performance on the part of the plaintiff of his part of the agreement was not of such character as to preclude his being compensated in a pecuniary way for the services rendered and that therefore his prayer for a decree that the title to the real estate should be adjudged to be in him ought not to have been granted. Further consideration leads us to the conclusion that the decree and our former judgment in this respect were right and should be adhered to. It is very doubtful if any pecuniary standard could be set up by which the plaintiff could be adequately compensated for the services performed in carrying out the agreement. In *Teske v. Dittberner*, 70 Neb. 544, the writer expressed some doubt as to the equitable right of the plaintiff in that action to a decree of specific performance because the nature of the services performed were such that adequate pecuniary compensation could have been awarded. The majority of the court, however, thought that a decree directing specific performance was proper, and it was so ordered. The reasons for giving to the plaintiff just what he contracted for in the case at bar appeal as strongly, or more so, to the conscience of the chancellor than in the case cited. The agreement in the instant case was a reasonable one on its face. The estate of the deceased was limited in value, and in the main consisted of the eighty acres of real estate in controversy. The longevity of the deceased was then unknown, and the expenses of caring for him and the consideration required of the plaintiff in the performance of his part of the contract were uncertain. His home life and business affairs in Kansas, where he was then living, were brought to an abrupt con-

clusion, and, as is said in the former opinion, presumably at a pecuniary sacrifice. He and his family took up their abode with the deceased and undertook to care for him and incur the expense incident thereto and to obtain a living for themselves under the new environments, for an indefinite duration of time. They were required to sever their old associations and business relations and adjust themselves to the new conditions surrounding them. It is difficult, indeed, if not impossible, under the circumstances, to lay down a rule by which the plaintiff could be awarded pecuniary compensation for what he had done in the performance of the agreement. There are many elements which enter into consideration of the matter, the value of which it is impossible to measure in dollars and cents. It is to be borne in mind that the plaintiff comes into a court of equity seeking relief, not for a part performance of the conditions of an agreement on his part to be performed, but only after he had discharged every duty resting upon him thereunder and fully performed all that he had undertaken to do. The agreement and its performance on his part are clearly and unequivocally established by the evidence and it would seem inequitable to deny him the relief prayed for. The evidence, we think, supports the decree entered in the trial court. On the authority of the cases cited in the former opinion, more particularly *Howe v. Watson*, 179 Mass. 30, 60 N. E. 415, the right of the plaintiff to a decree awarding him the land in controversy seems to be clear and the conclusion heretofore reached is therefore right and should be adhered to.

It is further contended that this action is not maintainable because of the proceedings had in the probate court regarding the allowance and probate of the will under which appellants claim. It is said this suit is a collateral attack on the order of the probate court allowing the will and admitting it to probate and therefore the action ought not to be maintained. The objection is not regarded as tenable. The probate court was without jurisdiction to try and determine title to real estate. The will

which had been admitted to probate devising the property
to the heirs of the testator could have no greater weight
than would other instruments executed by the testator by
which title was attempted to be conveyed to the prejudice
of the rights of the plaintiff. The will undertook to devise
the real estate in controversy to the heirs at law of the
testator. Whether they claimed as heirs at law or as devi-
sees would not affect their legal status nor prevent a
court of equity from quieting title in the person found to
be the beneficial owner. Equity in such cases impresses a
trust upon the property which will follow it into the hands
of the personal representatives or devisees of the person
obligated to convey the legal title. *Teske v. Dittberner,
supra.* The subject matter of the controversy was in re-
spect of title to real estate, and the right of plaintiff to a
decree for the specific performance of the parol agreement
to devise, and quieting title in the plaintiff as against all
others claiming the property either as heirs at law or as
devisees under the probated will. In either instance the
jurisdiction of the district court was not curtailed by the
proceedings had in the probate court touching the allow-
ance of the will and its admission to probate. The pro-
bated will was the evidence of title under which appellants
claimed, and the alleged agreement was the basis of the
relief sought by the plaintiff, notwithstanding the convey-
ance of the legal title by the promisor by means of such
will. The suit to quiet title in the plaintiff was in no sense
a collateral attack upon the judgment admitting the will
to probate. The legal effect of the decree was to avoid the
attempted devolution of title by will, and to adjudicate in
plaintiff's favor superior right and equity in the land in
controversy. The opinion heretofore announced, and the
judgment of affirmance in accordance therewith, correctly
determines, we think, the rights of the litigants, and the
same is therefore adhered to,

AFFIRMED.