[Civ. No. 2712.   Fourth Appellate District.—August 29, 1940.]

FRANK W. TROWER et al., Appellants, v. LILLIAN B. YOUNG, Respondent.

540

A. R. Trower, *in pro. per.*, and Wright, Monroe, Harden & Thomas, Wright, Thomas & Dorman and Monroe & McInnis for Appellants.

Von Seggern & Hawkes for Respondent.

GRIFFIN, J.—This appeal is taken by plaintiffs and appellants from the judgment and order of the Superior Court of San Diego County sustaining both a special and general demurrer to plaintiffs' amended complaint without leave to amend, and from the judgment thereon entered in favor of defendant and respondent Lillian B. Young, individually.

The amended complaint alleged that one William R. Blake died intestate on February 26, 1916, leaving as his heirs at law his wife, Libbie J. Blake, two brothers, Robert Blake and John Ross Blake, two sisters, Matilda Blake Munro and Annie Blake Leavitt, and certain nephews and nieces who were the children of Richard Blake, a deceased brother. William R. Blake and Libbie J. Blake had no children. In the course of settling up the estate of the deceased William R. Blake, his widow, Libbie J. Blake, about March 27, 1916, entered into an agreement in writing with his other heirs. The substance and general effect of the agreement was that in consideration of the release and quitclaim by these particular heirs of all of their interest in her husband's estate, she would by her own last will and testament leave to them one-half of such property as she might own at the time of her death. The writing read in part:

"To the heirs of W. R. Blake, Deceased:

" . . . Since you have been so kind as to assure me that you would relinquish your claim to the estate, my lawyer has prepared a deed of relinquishment and it is enclosed herewith. In showing my appreciation of your kindness, I will,

in my last Will and testament, bequeath and devise to you, the heirs of my late husband, in equal shares, one-half of my entire estate. This will then give you each 1/10th of the property, instead of the 1/20th which you would get according to law, in the distribution of Mr. Blake's estate. Further, I have made arrangements to pay Robert Blake all that is due him from my late husband, and have prepared and will give to him a promissory note, for the amount due him, upon his execution of the enclosed deed. . . . ''

A deed of relinquishment was executed by the parties, delivered to Libbie J. Blake, and duly recorded on January 4, 1917. By its terms there is quitclaimed to her all their interest in certain real estate theretofore owned by her husband. This deed was acknowledged at different times by different individuals, in March, April and May of 1916, one of the acknowledgments being taken in London and one in Scotland. There is set forth in the complaint in detail the fact of the subsequent death of some of the parties who executed the release and quitclaim and the relationship of other parties involved in the litigation to the interested parties so deceased. One of the brothers, Richard Blake, Sr., predeceased William R. Blake, without executing a will and left four children, viz., Richard Blake, Jr., Annie Blake Aitken, Jessie B. Dalrynple, and Madge Blake Woolard. The quitclaim deed was signed by all of the children except Richard Blake, Jr., who died testate in 1917.

It is further shown in an amendment to the complaint that prior to the commencement of the action and subsequent to the death of Libbie J. Blake, certain heirs assigned their interests to the plaintiff and appellant Frank W. Trower and certain of them assigned their interests to the plaintiff and appellant A. R. Trower. Other of the claimed successors in interest were made parties defendant. It is further alleged that although Libbie J. Blake from time to time and upon various occasions represented and stated for the benefit of the interested parties that she confirmed and reiterated her agreement to execute a will in their favor, and that the agreement was for the benefit of the heirs and distributees of the parties who signed such deed of relinquishment but who had since died or who died prior to her death, that nevertheless she failed to comply with such agreement and died intestate on January 3, 1937.

The action is in the nature of one to impress a trust upon the property of the decedent Libbie J. Blake, and to quiet title. The inventory and appraisement in her estate shows that of the fifteen separate parcels of real estate listed as part of the assets of her estate, thirteen of those parcels were likewise included in the description of the property contained in the quitclaim deed executed by the heirs of· William R. Blake, deceased.

Several attacks were made upon plaintiffs' pleading. Apparently there was but one ground upon which the trial court based its ruling and decision. The complaint contains no allegation that a claim was filed by the heirs in the probate proceeding. It was contended by the respondent and it was held by the court that the interest of the appellants under the written agreement to make a will was not such as necessitated the intervention of a court of equity for granting relief; that the appellants and the parties interested under such agreement had an adequate remedy at law by way of a claim for damages by reason of the breach of the contract; that the proper remedy was therefore by way of a claim against the estate and that an action for specific performance or to impress a trust upon the property of the estate therefore did not lie. Upon this basis the court sustained the demurrer without leave to amend.

It is conceded that no claim was filed against the estate as provided by the Probate Code, and that therefore if the only proper or available remedy was by the presentation of such claim, that plaintiffs would be entitled to no relief, for the reason that the time for the filing of such claim had expired and accordingly there would have been no reason to permit an amendment. The demurrer contains many allegations in reference to uncertainty and ambiguity. These were apparently not passed upon by the court and obviously, if any of them were found to have been well taken, permission no doubt would have been granted to amend the complaint. No useful purpose could be served in discussing these grounds of demurrer.

It is the position of the plaintiffs and appellants that the allegations of the amended complaint made out a good cause for equitable relief and one in which the plaintiffs had no plain, speedy nor adequate remedy at law, and contend that the presentation and filing of a claim against the estate was neither necessary nor proper.

Respondent, in support of the court's ruling, not only argues that a claim should have been filed, but contends, among other things, that in view of the fact that the brothers and sisters of William R. Blake predeceased Libbie J. Blake, the heirs of the deceased sisters and brothers, the original promisees, are not authorized to bring an action to impress a trust upon the property of decedent Libbie J. Blake. She contends this proceeding is in the nature of an action to compel specific performance of a contract. It is further argued that they, as heirs at law of the promisees, have no vested enforceable interest in such a contract. In support of the first argument respondent particularly relies upon *Morrison* v. *Land,* 169 Cal. 580 [147 Pac. 259], wherein it was said:

"An ordinary action at law for breach of the contract would bring him the very thing to which he is entitled under the allegations of his complaint—afford him full and adequate relief. In such an action, the measure of damages would have been the value of the property agreed to be bequeathed, for that was the amount in which he was damaged by the breach."

To the same effect respondent also cites *Zellner* v. *Wassman,* 184 Cal. 80 [193 Pac. 84], *Etchas* v. *Orena,* 127 Cal. 588 [60 Pac. 45], *De Mattos* v. *McGovern,* 25 Cal. App. (2d) 429 [77 Pac. (2d) 522]; *Verdier* v. *Roach,* 96 Cal. 467 [31 Pac. 554], *Maddock* v. *Russell,* 109 Cal. 417 [42 Pac. 139], *Roy* v. *Pos,* 183 Cal. 359 [191 Pac. 542], and *Flood* v. *Templeton,* 148 Cal. 374 [83 Pac. 148].

As to the second point, it is argued that no enforceable contract rights vested in any of the plaintiffs' assignors; that the plaintiffs' assignors have established no connection with the agreement sued on; that they are not parties to the contract; that there. is no inheritable property right in a contract to make a will as such, and even if such right exists they have not shown that such right vested in them; that such a right could have been lost or dissipated in some manner; that the obligation to make a will lapsed with the death of the original promisees, there being no intention expressed in the documents relied on that parties other than the original promisees were to benefit by the will, citing *O'Neil* v. *Ross,* 98 Cal. App. 306 [277 Pac. 123], 68 Cor. Jur., pp. 584, 585, sec. 201, *Hillman* v. *Shannahan,* 4 Or. 163 [18 Am. Rep. 281], *Casady* v. *Scott,* 40 Ida. 137 [237 Pac. 415]; *Wikstrom* v. *Yolo Fliers Club,* 206 Cal. 461 [274 Pac. 959], sec. 92,

Prob. Code, and *Everdell* v. *Hill*, 58 App. Div. 151 [68 N. Y. Supp. 719].

Appellants point out that they have not elected to bring an action for damages for breach of a contract to make a will and although the action is not actually one for specific performance because the party who has made the contract is now dead, it is claimed that it is an action to impress a trust upon the property of a decedent and as it is in the nature of an action for specific performance it is governed in the main by the rules governing such proceedings. They concede that in this type of an action, where the party has a plain, speedy and adequate remedy at law, resort may not be had to equity, but contend that the trial .court erred in holding, under the facts pleaded, that these parties had such plain, speedy and adequate remedy, and insist they may apply to equity to enforce their rights and that therefore the demurrer should have been overruled.

It is further argued that the trial court overlooked the essential nature and character of the contract involved and of the demands which appellants were seeking to enforce; that it was the very gist and essence of the contract sued upon that the heirs of William R. Blake were to be placed in the position of distributees of the estate of the decedent; that in exchange for their interest as heirs in the real estate and personal property left by William R. Blake, they were to become beneficiaries in one-half of the estate of his widow and that they were not in the position of selling an interest for a specified sum and not in the position of parties to an agreement whereby they were to. receive either a certain sum or a ΄certain value for the interest they relinquished; that it was the very essence of the agreement that they were to receive but a portion of the property that might remain in the estate of Libbie J. Blake after the debts and costs of administration were paid; that there is a vast difference between the status of one who by contract is in fact a creditor of the deceased and one who by contract or other relationship becomes an heir or distributee or the owner of a share of the property remaining after the payment of debts; that a creditor is allowed to be paid along with other creditors regardless of whether anything be left for the heirs or distributees; that a distributee is to receive nothing until all debts and costs of administration have been paid. It is argued that these principles have been repeatedly recognized, citing *Fred*

v. *Asbury*, 105 Ark. 494 [152 S. W. 155], *Oles* v. *Wilson*, 57 Colo. 246 [141 Pac. 489], and *Brickley* v. *Leonard*, 129 Me. 94 [149 Atl. 833], wherein it is said:

" . . . this is not a claim against the estate . . . but a claim against and for certain property, real and personal, which, impressed with a trust in favor of the plaintiff, does not and cannot be said to form any part of the estate of the deceased."

The case of *Furman* v. *Craine*, 18 Cal. App. 41 [121 Pac. 1007], is also cited in support of this contention.

Appellants rely principally upon the case of *Stewart* v. *Smith*, 6 Cal. App. 152 [91 Pac. 667], in which a hearing by the Supreme Court was denied. That action was brought for the purpose of enforcing contractual provisions for the disposition of property by will. There the plaintiffs, at the request of their mother, conveyed to her all their interest in the estate of their deceased father upon her agreement to will all of the residue of the estate remaining at her death to them or their heirs. The contract was oral. The court after reviewing prior California decisions and many decisions from other states held that specific performance might be had and the action might be maintained. Among other things the court said:

" . . . assuming, as we must, that all the facts alleged in the complaint are true, only one conclusion can be reached in consonance with the principles of equity and justice and in harmony with the best-considered cases. . . . There is no uncertainty as to the intention of the parties, and as to Mrs. Stewart the contract was eminently fair, just and reasonable. She received property more than thirty years ago from each of the children, of the value of nearly one thousand dollars, upon the promise that she would leave to the promisee an indefinite amount— . . . at some certain period. . . .

"Again, the mother received *real* property as a part of the consideration and the *peculiar* value of such property is a decisive element in actions for specific performance. If the children had parted simply with personal property, under the decisions it might be that application would have to be made to the law side of the court, but here no such contention can be maintained. If the plaintiffs did not present a case for specific performance then it is idle to assert that it is ever proper to decree specific performance of an oral agreement to devise property to a particular individual. The

decision of the court below upon the admitted facts was just and equitable, and a contrary view is intolerable in contemplation of fair dealing and good conscience."

In the case at bar interests in real property were conveyed to the decedent upon her undertaking that the parties so conveying the property would be made beneficiaries under her will to the extent of one-half of her property. It is true that there was no express agreement to leave a specific interest in any specified real property, but it is also true that by the terms of the agreement the heirs were to receive a one-half interest in any real property which the deceased might own at the time of her death. It should be noted that in the case of *Stewart* v. *Smith, supra,* in determining that an equitable remedy in the nature of specific performance was a proper remedy, the decision was primarily based upon the fact that the parties seeking such specific performance had given to the mother and the mother had received real property as a part of the consideration and that, as always, the peculiar value of such property is a decisive element to be considered. The heirs of William R. Blake did transfer to the decedent their interest in a great number of parcels of real estate and it is because of the peculiar value which the courts generally ascribe to individual tracts of real estate that equitable actions of this sort have been held to be the proper remedy. It is quite apparent that under the contract involved in this action it was the very essence of the understanding of the parties that they were to occupy the status of distributees under the estate and not that of creditors.

In *Erwin* v. *Mark,* 105 Mont. 361 [73 Pac. (2d) 537, 113 A. L. R. 1064], an action was brought in the nature of specific performance to enforce an alleged agreement whereby in consideration of certain peculiar and personal services the decedent had agreed to leave a bequest of $4,000 to the plaintiff. It was contended that such action could not be maintained and that a claim should have been presented. The court considered the cases of *Morrison* v. *Land, supra,* and *Zellner* v. *Wassman, supra,* upon which respondents herein rely, and held that they did not apply to the facts involved. Among other things, the court said:

"The difference between a 'demand against the estate', within the meaning of the statute, and the rights of the claimant under a contract like the one at bar, is radically

and sharply defined. The former is a demand against the estate which must be paid or satisfied in advance of distribution; while the latter is a right or interest in the estate, an equitable ownership therein, after the claims against the estate have been allowed and paid. . . . According to the allegations of the complaint, plaintiff is not a creditor of the estate, in the sense that her claim would have to be paid ahead of bequests in case a will were left by deceased. By the very terms of the contract she was to become the beneficiary of a bequest in the sum of $4,000. Whether she would actually get that amount of money would depend upon, first, the amount of debts owing by the deceased, and, second, whether, after the debts were paid, there was sufficient property in the estate to pay all legacies in full. These issues could not be settled in an action at law for damages.''

In commenting on *Morrison* v. *Land, supra,* the court pointed out that there was involved in that case a contract of such nature that services could readily be compensated for in money and there were not involved extraordinary or peculiar services.

It appears to us from the pleadings in the instant case that the heirs parted with an interest in specific real property, in return for which it was agreed that they were to be placed in the status of distributees or part owners, entitled to a one-half interest in any real or personal property owned by the deceased at the time of her death and that they were not compelled to assert a claim for a specified sum of money in lieu of their interests in those specific properties.

It is true that in many of the cited cases the fact that real estate is involved was held not to be decisive or determinative of the question whether a creditor's claim should or should not be filed. (*Owens* v. *McNally,* 113 Cal. 444 [45 Pac. 710, 33 L. R. A. 369].) However, when specific real estate has been given by the parties in consideration for an agreement that the promisor may use it and enjoy its benefits and she agrees to make the promisees residuary beneficiaries of her estate by will, that fact may well be considered in determining whether the legal remedy would be full and adequate and do complete justice, or whether the exclusive jurisdiction of equity to grant relief by way of specific performance of a contract should be exercised and whether the legal remedy of compensatory damages would be sufficient under the circumstances of the case, in the opinion of the court,

to do complete justice between the parties. (*Morrison* v. *Land, supra.*) ■ So far as the question of the necessity of presenting a creditor's claim is concerned, we are unable to distinguish, in principle, the facts and reasoning applied in *Stewart* v. *Smith, supra,* from the facts pleaded in the instant case. (See, also, *Rogers* v. *Schlotterback,* 167 Cal. 35 [138 Pac. 728].) We therefore conclude that, at least, the pleadings give rise to a cause of action in equity.

■ The remaining question presented involves the right of appellants as proper parties interested to maintain the action. It will be observed in *Stewart* v. *Smith, supra,* that two of the plaintiffs seeking to impress a trust upon the estate of their deceased mother were children of the decedent. The two other plaintiffs were daughters of a deceased child of decedent. Although the question of the right of the heirs of the deceased daughter to bring the action was not in issue in that case, the court nevertheless upheld a judgment in their favor. The only difference noted in this regard in the claimed oral agreement there construed and the writings here sought to be construed is this: By the terms of that oral agreement the decedent agreed to leave the property to her ten children share and share alike, *or to the heirs of any deceased child by right of representation.* The document before us, signed by Libbie J. Blake, is addressed to the ''heirs of W. R. Blake, deceased'' and provides that she ''will, in my last Will and testament, bequeath and .devise to you, the heirs of my late husband, in equal shares, one-half of my entire estate''. The question then presented is this: Do the heirs of the promisees (i. e., the heirs of the deceased brother and sisters), and the heirs of the deceased nephew and nieces, which nephew and nieces were children of the deceased brother, have a vested enforceable interest in the contract? It is respondent's contention that the contract was personal and was an agreement to will property to the individuals themselves, and lapsed upon their death. Reliance is placed upon the case of *O'Neil* v. *Ross, supra.* It will be observed and was pointed out by the trial court, that in the O'Neil case, the consideration for the promise to make the will did not emanate from those in whose favor she agreed to make such provision. The question there presented turned upon the power of appointment. In the instant case the consideration for the promise was the conveyance and relinquish-

ment of specified property interests by those persons to whom the promise was made.

Detailed allegations are contained in the amended complaint for the purpose of showing the interests of the present plaintiffs and other parties involved as successors in interest of those who signed the original deed of relinquishment. Whether appellants can sustain their allegations by proof is not before us. For the purpose of this appeal we must assume the truth of them. The prayer of the complaint is not for money damages but seeks to have Frank W. Trower, by reason of the assignments, declared to be the owner of 3/10ths and A. R. Trower the owner of 3/40ths of all the property belonging to Libbie J. Blake, deceased. The parties plaintiff have shown by the pleadings a right to maintain the action. (Secs. 953, 954, Civ. Code.) It is the general rule that under the circumstances here pleaded the contract inures to the benefit of the heirs of the promisees. This is particularly true where the promise is not of a purely personal nature and does not involve the performance of services by the promisor herself, but is made pursuant to a consideration which is paid and received. The further allegation that the promisor recognized and confirmed the obligation as surviving the beneficiaries' deaths and that it extended to the heirs must be considered. (68 C. J., pp. 584, 585, sec. 201; *Stewart* v. *Smith, supra; Chase* v. *Stevens,* 34 Cal. App. 98 [166 Pac. 1035]; *Carstairs* v. *Bomar,* (Tex. Civ. App.) 48 S. W. (2d) 786.)

For the reasons expressed, the judgment is reversed with directions to the trial court to overrule the demurrer as to the grounds here considered and allow appellants a reasonable time in which to answer.

Barnard, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 28, 1940.